UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KLAS MANAGEMENT, LLC and<br>KLAS APARTMENTS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CHUBB CUSTOM INSURANCE<br>COMPANY; CHUBB GROUP HOLDINGS,<br>INC.; YORK RISK SERVICES GROUP,<br>INC.; and<br>EFI GLOBAL, INC.,<br><br>Defendants. | Case No. 2:17-cv-12663<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING MOTIONS TO DISMISS [16, 18]**

Under the terms of its insurance policy, Klas Apartments, LLC had two years from the date its apartment complex sustained storm damage to sue its insurer, Chubb Custom Insurance Company, for not paying for the damage. But Klas waited two years and a month to file suit. So, as will be explained in detail below, Klas sued Chubb for breaching the insurance policy too late.

Klas has also sued the company that Chubb retained to assess the damage to the apartment complex, York Risk Services Group, Inc. Klas says York misrepresented the amount of damage to the complex (it was far greater than York said it was) which resulted in Chubb not paying all of Klas' claim. But Klas has not pled that it took any actions in reliance on York's alleged undervaluation, so Klas' claim against York will also be dismissed.

# I.

## A.

As Chubb and York say they should be dismissed even if Klas' allegations are true, the Court presents Klas' allegations as fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Charlotte Arms is an apartment complex located in Monroe, Michigan. (PageID.13.) Its 108 apartments are spread across three buildings. (PageID.13.) A fourth building houses the complex's management office, community room, and laundry. (PageID.13.)

In July 2014, Chubb Custom Insurance Company (Chubb) issued a one-year insurance policy to Klas Apartments, LLC (Klas), which, apparently, owns or operates the Charlotte Arms apartments. (To be more accurate, the policy was first issued to Charlotte Arms, LLC but the named insured was changed to Klas Apartments, LLC effective the date the policy was issued. (PageID.514.)) Under the policy, in exchange for a $14,000 premium, Chubb would pay Klas "for direct physical loss of or damage" to the Charlotte Arms apartment complex "caused by or resulting from any Covered Cause of Loss." (PageID.455.)

On June 11, 2015, a summer hailstorm swept through Monroe. (PageID.12.) "Doppler radar detected that 'half-dollar' size hail was spotted in and around Monroe" with some people reporting "hail measuring two . . . inches, or more." (PageID.12.) The storm caused substantial damage to the Charlotte Arms complex. (PageID.13.)

Just how substantial is the subject of considerable debate.

In September 2015, Klas obtained an estimate from Precise Construction and Remodeling. (PageID.13.) Precise thought Charlotte Arms had sustained about $328,000 in damage. (PageID.13.) Klas submitted a claim to Chubb, apparently relying on Precise's estimate. (PageID.13.)

Chubb selected York Risk Services Group to be the adjuster on Klas' claim. (PageID.21.) In October 2015, York submitted an estimate to Chubb. (PageID.13.) Apparently, York thought the Precise estimate was anything but that. After factoring in depreciation (Charlotte Arms was built in the 1970s), York estimated the loss at about $225,000. (PageID.13.)

Around December 2015, Chubb elected to pay the "undisputed" amount of the loss, $200,154.55 to be precise. (PageID.14; *see also* PageID.17–18.)

In January 2016, Klas retained Odawa Development, LLC (and Design Pinnacle Group, LLC) to do "a thorough inspection" of Charlotte Arms. (PageID.14.) Odawa found that siding had been damaged and that there were "dents and holes from the hail . . . visible throughout." (PageID.14.) Odawa also found that there were holes in roof decks (the part underneath the shingles), that water had leaked through those holes into attics, and that "all of the attic spaces contained significant mold growth as a result." (PageID.15.) In Odawa's view, Charlotte Arms had sustained about $424,000 in damage. (PageID.16.) In April 2016, Klas submitted Odawa's report to Chubb. (PageID.16.)

Sometime later, EFI Global, Inc., on behalf of York or Chubb (or both), issued a report about the damage at Charlotte Arms. (*See* PageID.16–17.) Unlike Odawa, EFI found no damage to the roof decks attributable to the hailstorm; it also found no attic mold attributable to the hailstorm. (PageID.17.) EFI further opined that any damage to the siding did not require it to be replaced. (PageID.17.)

To this day, "York has still not sent a formal denial letter" to Klas and thus the amount it is owed under the insurance policy "remains disputed and outstanding." (PageID.18.)

**B.**

More than two years after the hailstorm, July 10, 2017, to be exact, Klas sued Chubb, York, and EFI. (PageID.22.) (Although Klas Management, LLC is also a plaintiff and Chubb Group Holdings, Inc. is also a defendant, because it makes no difference in the Court's analysis, the Court will continue to use "Klas" and "Chubb.")

Against Chubb, Klas has two claims. One is that Chubb breached the insurance policy by not paying it the difference between the undisputed amount and Odawa's estimate (approximately $223,000). (PageID.18.) Klas' other claim against Chubb is pursuant to a provision of Michigan's insurance code, one requiring insurers to pay 12% interest on late payouts. (PageID.19.)

As for York, Klas says that the adjuster is liable for the tort of negligent misrepresentation. (PageID.20–21.) Klas believes York provided Chubb with false information about the damage at Charlotte Arms which then caused Chubb not to pay all of Klas' claim. (*See* PageID.20–21.)

Both York and Chubb have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

**II.**

In deciding a motion to dismiss under Rule 12(b)(6), the Court asks whether, accepting the complaint's factual allegations as true, it is "plausible" that the defendant is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If so, the case proceeds to discovery; if not, then it is dismissed.

## III.

### A.

Setting out what Klas and Chubb have and, more importantly, have not argued, goes a fair way to deciding Chubb's motion.

Chubb argues that Klas has sought relief from a court too late. In particular, Chubb relies on the following language from the insurance policy: "No one may bring a legal action against us under this Coverage Part unless . . . [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." (PageID.491.) Chubb points out that the hailstorm was on June 11, 2015 and that Klas filed suit on July 10, 2017—about a month too late. (*See* PageID.425, 429.)

In response, Klas does not argue that June 11, 2015 was not "the date on which the direct physical loss or damage occurred"; nor does it argue that its claims against Chubb are not "under this Coverage Part." Instead, Klas argues it is entitled to tolling under § 500.2833(1)(q) of the Michigan Compiled Laws. (*See* PageID.583–84.) That provision of Michigan's insurance code requires fire-insurance policies to state that the "time for commencing an action is tolled from the time the insured notifies the insurer of the loss until the insurer formally denies liability." And another insurance-code provision renders any contrary language in a fire-insurance policy "absolutely void." *See* Mich. Comp. Laws § 500.2860. As the policy it obtained from Chubb contains no tolling, Klas argues that the policy's limitations period is contrary to § 500.2833(1)(q) and thus absolutely void. (PageID.586.) And, Klas adds, Chubb has to this day not "formally denie[d] liability" and so its lawsuit is still timely under § 500.2833(1)(q). (PageID.585–86.) (Klas makes a similar argument based on a Michigan administrative rule prohibiting insurers from shortening statutory limitations periods; but the rule appears to pertain

5

only to "personal insurance" policies, *see* Mich. Admin. Code R. 500.2211(c), (d); *Oakland-Macomb Interceptor Drain Drainage Dist. v. Zurich Am. Ins. Co.*, No. 13-CV-12399, 2013 WL 5638755, at *4 (E.D. Mich. Oct. 15, 2013), and Klas has not explained why it should apply to commercial insurance.)

In response to Klas' reliance on the statutory tolling provision found in § 500.2833(1)(q), Chubb claims that Michigan's insurance code, or at least that tolling provision, does not apply to it. That claim is based on two premises: (1) Chubb Custom is a surplus lines carrier and (2) Michigan's insurance code does not cover surplus lines carriers. (PageID.438–440, 594.)

There is ample law backing Chubb's second premise. Start with Michigan's Surplus Insurance Act. That Act defines "surplus lines insurance" as insurance obtained from "an unauthorized insurer," Mich. Comp. Laws § 500.1903, and then says that "[f]orms used by unauthorized insurers pursuant to [the Surplus Lines Insurance Act] shall not be subject to [the insurance] code, except that a policy shall not contain language which misrepresents the true nature of the policy or class of policies," Mich. Comp. Laws § 500.1904(2); *accord Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426, 438 (Mich. Ct. App. 2005).

Case law supports Chubb's second premise too. *See Gulf Underwriters Ins. Co. v. McClain Indus., Inc.*, No. 273768, 2008 WL 3021134, at *2 (Mich. Ct. App. Aug. 5, 2008) (finding a provision of Michigan's insurance code "inapplicable . . . because Gulf Underwriters is a 'surplus lines carrier'"); *Gulf Underwriters Ins. Co. v. McClain Indus., Inc.*, 765 N.W.2d 16, 16 (Mich. 2009) (Young, J., concurring in denial of leave to appeal) ("[T]his case involves a surplus lines insurance contract that . . . is not subject to the general provisions of the Insurance Code."); *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, No. 16-11536, 2017 WL 227958, at *4 (E.D. Mich. Jan. 19, 2017) ("As a surplus lines carrier authorized by the Michigan Department of

6

Insurance and Financial Services, Scottsdale was 'not subject to the general provisions of the Insurance Code'" (quoting *Gulf Underwriters*, 765 N.W.2d at 16 (Young, J., concurring))), *rev'd on other grounds*, 878 F.3d 530 (6th Cir. 2017); *ID Ventures, LLC v. Chubb Custom Ins. Co.*, No. 17-14182, 2018 WL 1792372, at *3 (E.D. Mich. Apr. 16, 2018) (relying on *Gulf Underwriters* and *Palmer Park Square* for the proposition that "surplus lines carriers are free to include policy language that is otherwise inconsistent with the code" (internal quotation marks omitted)).

Perhaps because of the just-recited law, Klas does not argue that surplus-lines carriers must comply with the insurance-code provision requiring (fire) insurance policies to have a tolling provision. (*See* PageID.589–90.) Instead, Klas attacks the first premise of Chubb's argument: that Chubb Custom is a surplus-line carrier. (*See* PageID.589–90.)

Given how the parties have argued the statute-of-limitations issue, the dispute boils down to whether Chubb Custom is a surplus-line carrier. Or, more precisely, is it plausible that Chubb Custom is not a surplus-line carrier? (The case is at the pleading stage, after all.)

Before answering that question, the Court must decide what it can consider in formulating its answer. Klas' complaint does not say that Chubb Custom is a surplus-line carrier. Instead, Chubb attached a printout to its motion from the Michigan Department of Insurance and Financial Services that says "Chubb Custom Insurance Company . . . Entity Type: Surplus Lines Insurer." (PageID.445.) Chubb thus wants the Court to go beyond the pleadings in deciding its Rule 12(b)(6) motion.

While a court can consider "matters of public record, orders, items appearing in the record of the case" in deciding a motion to dismiss, *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001), statements in those documents cannot be uncritically accepted as fact, *see In re*

*Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 442 (6th Cir. 2012); *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). To the contrary, for a statement in a public record (or the like) to be accepted as true at the pleading stage, it must be that the statement is not "subject to reasonable dispute," i.e., it is fit for judicial notice. *See Omnicare*, 769 F.3d at 467; *Passa*, 123 F. App'x at 697.

The rationales underlying these rules illuminate them. On the one hand, if a court were stuck with just the complaint on a motion to dismiss, a plaintiff could force a defendant to engage in costly discovery by omitting from its complaint an indisputable, dispositive fact. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). On the other hand, if a statement in a public record (or the like) is "subject to reasonable dispute," accepting the statement as true would (or at least might) deprive the plaintiff of the presumption of truth to which his complaint is entitled. *Carrier*, 673 F.3d at 442; *cf. Passa*, 123 F. App'x at 697 (providing that a plaintiff should have an opportunity to "register his or her disagreement" with statements in public records).

These rules and their rationales lead to this conclusion: it is proper to deem Chubb Custom a surplus-lines carrier at the pleading stage. There is no reason to think that the printout from the Michigan Department of Insurance and Financial Services' website is forged; indeed, Klas has not questioned the document's authenticity. And the assertion that Chubb Custom is a surplus-lines carrier does not directly contradict any allegation in Klas' complaint. Nor is the assertion subject to reasonable debate. Klas asserts that surplus-lines insurance is permitted only when insurance is not available from authorized insurers and here, coverage was available from "dozens" of authorized insurers. (PageID.589.) But Klas has not identified even one authorized insurer that would have covered Charlotte Arms from July 2014 to July 2015. Klas also points

8

out that the insurance code lists conditions where coverage from authorized insurers is presumptively available. (PageID.589.) But Klas has not shown that those conditions existed when it was shopping for insurance in July 2014. (PageID.589.) Finally, Klas argues that "Chubb is the world's largest publicly traded property and casualty insurer" and thus cannot possibly be a surplus-lines carrier. (PageID.589.) But this argument confuses Chubb the multinational with Chubb Custom Insurance Company—the latter being the insurer in this case.

To the extent that Klas' arguments put Chubb Custom's surplus-lines status in doubt, the Court took steps to erase it. In reviewing the Surplus Insurance Act, the Court noticed that the Act requires every insurance form delivered by a surplus-lines carrier to contain a warning that the policy is not from a licensed insurer. *See* Mich. Comp. Laws § 500.1922. So the Court asked Klas to produce a copy of the policy in its possession (which is undoubtedly proper for consideration given the Klas' breach-of-contract claim, *see Carrier*, 673 F.3d at 442). Sure enough, the forms are stamped with the warning. In this Court's view, that ends any reasonable debate about whether Chubb Custom is a surplus-lines carrier.

Given that Chubb Custom is a surplus-lines carrier and that Klas has not contested the law providing that surplus-lines carriers are not subject to the insurance code, it is not plausible that Klas is entitled to statutory tolling. Its breach-of-contract claim is thus barred by the policy's two-year limitations period.

That leaves Klas' claim that, under Michigan Compiled Laws § 500.2006, Chubb owes it 12% interest because Chubb has delayed in paying insurance benefits. (PageID.18–19.) Chubb, primarily relying on *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, No. 16-11536, 2017 WL 227958 (E.D. Mich. Jan. 19, 2017), asserts that this claim is also untimely under the policy's limitations period. (PageID.431–33, 597 n.1.) But *Palmer Park* was reversed after briefing in this

9

case was complete (neither side submitted any supplemental briefing to disclose this fact). Noting that the policy's limitations period (just like the one here) barred untimely actions "arising under this Coverage Part," the Sixth Circuit reasoned that a claim for interest did not "arise under" the policy but, instead, under the 12%-interest statute. *See Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530, 543, 546 (6th Cir. 2017). So the limitations period for Klas' claim under § 500.2006 is six years, not the two in the policy as Chubb claims. *Id.* at 539–40.

Even so, Klas' claim for interest will be dismissed. The statutory language says, "If benefits are not paid on a timely basis, the benefits *paid* bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum . . . . The interest must be *paid* in addition to and *at the time of payment* of the loss." Mich. Comp. Laws § 500.2006(4) (emphases added). Here, Chubb has not yet "paid" the disputed amount (and Klas does not say Chubb paid the undisputed amount late). So Klas has no claim for interest under § 500.2006 as of now.

In sum, Klas Apartments' breach-of-contract claim was filed too late and its claim for 12% interest was filed too early.

**B.**

Remaining is York's motion to dismiss Klas' negligent-misrepresentation claim. That tort requires "proof that a party justifiably relied to his detriment on information provided without reasonable care by one who owed the relying party a duty of care." *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 81 (Mich. 1989); *accord Alfieri v. Bertorelli*, 813 N.W.2d 772, 775 (Mich. Ct. App. 2012). From York's perspective, Klas' factual allegations do not make

it plausible that Klas "justifiably relied to its detriment" on any information York provided. (*See* PageID.399–400.)

The Court agrees. Klas alleges that it "justifiably relied on information prepared by York, without reasonable care by York, to its detriment." (PageID.20.) But that "will not do" because it just echoes the elements of a negligent-misrepresentation claim. *Iqbal*, 556 U.S. at 678. Klas similarly pleads, "York knew that Chubb and [Klas] would rely on the report drafted by [E]FI and York in deciding Plaintiff's coverage." (PageID.21.) But how did Klas rely? And to what detriment? The complaint does not say. To the contrary, Klas pleads that it obtained two of its own assessments of the damage at Charlotte Arms (one by Precision, the other by Odawa). Klas' negligent-misrepresentation claim against York is thus implausible.

In arguing for a different result, Klas relies on a line of negligent-misrepresentation cases where one entity (say a title abstracter) contracts with another entity (say a property seller) to prepare some type of report (say a list of encumbrances on the property), the report is negligently prepared, and it is foreseeable that people who are not parties to the contract (say potential buyers) will rely on the report. *See Williams v. Polgar*, 215 N.W.2d 149 (Mich. 1974); *Ric-Man Constr., Inc. v. Neyer, Tiseo & Hindo Ltd.*, No. 329159, 2017 WL 188049, at *4–5 (Mich. Ct. App. Jan. 17, 2017) (finding negligent misrepresentation adequately pled where construction companies relied on designer's plans in placing their bids). The analogy here, in Klas' view, is that York and Chubb had an agreement where York would report on the damage at Charlotte Arms for Chubb. (*See* PageID.527.) And, Klas implies, because it was relying on Chubb's payment under the policy, York's inaccurate reports were to its detriment. (*See* PageID.527.)

The problem with Klas' analogy is that it has not pled that it took any actions in reliance on York's reports to Chubb. So Klas is not like the plaintiff in *Polgar* who relied on the title

11

abstract to buy the property or the plaintiff in *Ric-Man* who relied on the project plans in formulating its bid for the project.

## IV.

For the reasons given, Klas' breach-of-contract claim (Count I) and negligent-misrepresentation claim (Count IV) are DISMISSED WITH PREJUDICE and Klas' claim for statutory interest (Count II) is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

                                                      s/Laurie J. Michelson
                                                     LAURIE J. MICHELSON
Dated: June 28, 2018                       U.S. DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 28, 2018.

                                                      s/Keisha Jackson
                                                      Case Manager